# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

KENNETH WAYNE DILAS,    )

    )

    Plaintiff,    )

    )

v.    )    CV418-116

    )

JOSE MORALES, *Warden*, *et al.*,    )

    )

    Defendants.    )

FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 9:22 am, Jul 16, 2018

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Kenneth Wayne Dilas brings this 42 U.S.C. § 1983 action against Warden Jose Morales, Counselor Cynthia Rivers, Board of Pardons and Paroles Chairman James Mills, and Department of Corrections Commissioner Gregory Dozier.  Doc. 1.  The Court is screening his Complaint under 28 U.S.C. § 1915A, which requires the immediate dismissal of any prisoner complaint that fails to state at least one actionable claim against a governmental entity or official.

## I.   Background[1]

Dilas is confined at Coastal State Prison.[2]  That much is clear.  And he was provided, at some point, a tentative parole date of March 2018, contingent on his completion of certain Performance Incentive Credits (PICs), including a residential substance abuse program (RSAT) and a work release program.  Doc. 1 at 9.  He disputed the RSAT requirement because he had no history of drug or alcohol abuse.  *Id.*  He claims to have success in that matter, although it is not clear from his supporting exhibits that the RSAT requirement was actually removed.  *See* doc. 1 at 13 (reporting he "did win these [*sic*] grievance form and the Chief Counselor Ms. Rivers removed (RSAT) program from [his] case plan on or about August 6, 2017.").  Two months after he fought the RSAT requirement, he speculates that his "PIC-date release" was denied "in

---

[1]    Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in plaintiff's Complaint are taken as true and construed in the light most favorable to him.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

[2]    For reasons unclear to the Court, his address on the docket is listed as Wilcox State Prison.  He has never listed any other facility than Coastal State Prison as a return address, however, and the Georgia Department of Corrections lists Coastal State Prison as his current institution.  *See http://dcor.state.ga.us/GDC/Offender/Query, accessed* June 21, 2018.  The Clerk of Court is **DIRECTED** to update the docket accordingly, to ensure proper service upon plaintiff.

retaliation" for raising a fuss about the RSAT program. *Id*. at 15.[3]  He wants an explanation for that denial and wants defendants to "reimburse all taxpayers money that was paid and collected" for the "educational/treatment programs" that Dilas was either forced to complete (but failed to count towards his release) or never completed (but defendants pretended he had, in order to fraudulently charge off the cost). *See* doc. 1 at 26 & 29.  He also seeks money damages: $100,000 plus $1,000 per day "for each violation of [his] constitution[al] rights, from June 28, 2017." *Id*. at 30.

---

[3]   He also mentions his disability as a reason for the denial, though it is unclear whether he believes his disability is the reason for denying him work release or his tentative parole date, or both. *See* doc. 1 at 6 (concluding, without explication, that defendants conspired to deny him "from a t/c center (work release program) because of his (ADA) disability (American Disabilities Act).").  Dilas also hints at a conspiracy to deprive him of his Social Security benefits while incarcerated, and to send him to an assisted living facility to defraud the Government of Social Security benefits. Doc. 1 at 28.  It is unclear what he believes happened, or what relief he believes he is entitled to.

    Prisoners cannot draw Social Security while incarcerated.  42 U.S.C. § 402(x). And plaintiff claims to be disabled, by his diabetes and other medical conditions, *see* doc. 1 at 8, so the prison's contemplation of sending him to a facility that could better care for his needs does not necessarily imply any sort of bad intent.  Regardless, no action has been taken, and Dilas cannot state a federal claim for "contemplated care or treatment."  He certainly makes no allegation of inadequate medical care while incarcerated.  It is also unclear whether plaintiff's disability prevents him from qualifying for a work release program, so that he *must* be released into an assisted living facility.  *See* doc. 1 at 30 (alleging defendants denied him "a chance to work," and contending that while his "medical disability - assisted living is a factor," they should "give the plaintiff a chance (ADA - American Disability Act)".  As this allegation is subsumed into his claim for denial of parole, however, it need not be further addressed.

## II.   ANALYSIS[4]

To state a cause of action under the Civil Rights Act, it is necessary that there be an allegation that plaintiff was denied a constitutional right, privilege, or immunity.  *See* 42 U.S.C. § 1983.  Inmates within the

---

[4]  The Supreme Court has explained that a prisoner cannot pursue a § 1983 claim for damages where success on the claim would "necessarily imply the invalidity of his conviction or sentence . . . unless . . . the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  A prisoner's § 1983-based attack on parole proceedings is barred only if success on the claims would "automatically and necessarily" result in a speedier release. *Anyanwutaku v. Moore*, 151 F.3d 1053, 1055 (D.D.C. 1998); *see Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Certain parole eligibility and suitability challenges do not fall within the implicit habeas exception and are thus cognizable under § 1983.  *Wilkinson*, 544 U.S. at 82. Where a favorable judgment means only a new parole eligibility review or a new hearing but *not* immediate release from confinement or a shorter stay in prison, then the suit lies outside "'the core of habeas corpus'" and must be brought under § 1983. *Id.* at 79 (cite omitted).

Here, Dilas disputes the Parole Board's discretionary decision not to advance a tentative parole date.  He does not seek an injunction ordering his immediate or speedier release into the community, or even ask that the Parole Board be ordered to reconsider his application.  He instead asks for money damages for each day that has passed since he began complaining about the RSAT program requirement, that the taxpayer money used to fund his program requirements be refunded, and an explanation be given for the Parole Board's denial of his parole request.  Doc. 1 at 29-31.  In other words, even were the Court to give him everything that he wants, there is no guarantee that he would be *released* any sooner.

Assuming that what he's actually after is reconsideration of his parole eligibility calculus, however, "[t]he only benefit that a victory in this case would provide [Dilas], besides the possibility of monetary damages, is a ticket to get in the door of the parole board, thus only making [him] eligible for parole [re]consideration. . . .  If [he] win[s], it will in no way guarantee parole or necessarily shorten [his] prison sentence[ ] by a single day." *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997).  Because Dilas' claim would not "necessarily spell speedier release," it does not lie at "the core of habeas corpus." *Wilkinson*, 544 U.S. at 82 (quote omitted).  Dilas' claim thus must be brought under § 1983.

Georgia Department of Corrections, however, do not have a liberty interest in parole, transitional centers, or work incentive credits. *See Delgiudice v. Primus*, 679 F. App'x 944, 948 (11th Cir. 2015) ("[T]he Georgia parole system does not create a liberty interest protected by the Due Process Clause, since the substantial discretion reserved by the Georgia Board of Pardons and Parole belies any claim to a reasonable expectation of parole."); *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001); *Sultenfuss v. Snow*, 35 F.3d 1494, 1499-1502 (11th Cir. 1994). Under Georgia law, the Department of Corrections is authorized to implement a system to reward prisoners who obtain academic or vocational education, satisfactorily perform their work assignments, and comply with satisfactory behavior standards. O.C.G.A. § 42-5-101(b). The State Board of Pardons and Paroles *may*, but is *not required to*, apply those credits to advance an inmate's parole release date. *Id.* at § 42-5-101(c).[5]

---

[5] The mere existence of a parole system does not create a liberty interest in the parole release decision or a reasonable entitlement of prison inmates to due process protection in the parole *process*, since the possibility of parole provides no more than a mere hope that the benefit will be obtained. This is in contrast with parole *revocation* proceedings which must provide due process protections. When a release by parole depends on informed predictions, a prisoner cannot claim any entitlement to or due process liberty interest in a parole release.

59 Am. Jur. 2D (Pardon and Parole) §103 (May 2009), *quoted in Grady v. Dep't of Corr.*, 2009 WL 3112033 at *2 (S.D. Ga. Sept. 25, 2009).

It is well-settled that "when the statute is framed in discretionary terms there is not a liberty interest created." *Francis v. Fox*, 838 F.2d 1147, 1149 (11th Cir. 1988); *see Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991) (no due process liberty interest arises from the possibility that a prisoner *may* receive a discretionary grant of incentive good time); *Sultenfuss*, 35 F.3d at 1502 (because the Parole Board has discretion in making final parole decisions, "Georgia's parole system does not create a liberty interest in parole protected by the Due Process Clause."); *see generally Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979) (prisoners have no constitutional right to be released on parole before the expiration of their sentences; a state's parole system creates an interest protected by the Due Process Clause *only* if the system creates a legitimate expectation of parole, for example by use of mandatory language meaningfully limiting parole officials' discretion).   Any departure from the state parole guidelines' recommendation, therefore, does not violate a prisoner's Fourteenth Amendment due process rights. *Sultenfuss*, 35 F.3d at 1502.

In other words, in declining to advance his tentative release date, defendants have not deprived plaintiff a right "secured by the

Constitution and laws" of the United States.  *Baker v. McCollan*, 443

U.S. 137, 140 (1979); *see Sadiqq v. Bramlett*, 559 F. Supp. 362, 366 (N.D.

Ga. 1983) (to make out a *prima facie* case under § 1983, a plaintiff must

demonstrate the existence of a constitutional duty running from

defendants to himself).  Rather, they have declined to do something that

is within their (purely discretionary) power.  That does not state a

constitutional claim.  *See Sultenfuss*, 35 F.3d at 1502.[6]

But that does not mean that Dilas is entirely without remedy.

---

[6]  At first blush, the lack of a cognizable liberty interest in the Georgia parole system seems at odds with the Supreme Court's admonition that such a claim would have to be brought under § 1983.  *Compare Sultenfuss*, 35 F.3d at 1499-1502, *with Wilkinson*, 544 U.S. at 82.  But *Wilkinson* never addressed or superseded the liberty interest analysis -- it "merely identified parole claims that are not barred by *Heck*."  *Muraco v. Sandy*, 2007 WL 1381795 at * 6 (D. Idaho Mar. 12, 2007).  In Georgia, as in many states,

> prisoners have no liberty interest in release on parole, [so] they cannot challenge the procedures used to deny parole.  The Supreme Court's decision in *Wilkinson*[,] does not alter this conclusion.  The sole issue in *Wilkinson* was whether inmates were required to bring their challenges to the constitutionality of state parole procedures in habeas petitions or whether such claims were cognizable in actions pursuant to 42 U.S.C. § 1983.  The Supreme Court held that state prisoners could bring challenges to state parole procedures under 42 U.S.C. § 1983.  The Supreme Court did not have occasion to consider the merits of the plaintiffs' underlying claims and, in particular, the case did not concern whether any state's laws created a liberty interest in parole.  The decision in *Wilkinson*, therefore, has not provided the plaintiff in this case with a viable claim.

*Clark v. Traughber*, 2006 WL 721475 at *3 (D. Tenn. 2006) (cites omitted).  In other words, "before an inmate may bring a due process claim arising from a parole denial, he must show that there is a state-created liberty interest in parole."  *Muraco*, 2007 WL 1381795 at *7.  Where there is no such interest, there is no cognizable claim that his rights have been violated.

Where an inmate seeks to challenge the constitutionality of a decision of the State Board of Pardons and Paroles, "the proper remedy lies in a mandamus action against the Board." *Johnson v. Griffin*, 271 Ga. 663, 522 S.E.2d 657 (1999) (challenging the Board's decision that the petitioner was no longer eligible for parole); *see also Chandler v. Ault*, 234 Ga. 346, 216 S.E.2d 101 (1975) ("mandamus will lie to compel the Board of Pardons and Paroles to consider and pass upon the application for parole of a prisoner who is eligible for parole.") (citing *Matthews v. Everett*, 201 Ga. 730, 41 S.E.2d 148 (1947)).   To the extent that Dilas argues that defendants have violated Georgia law he might have grounds for mandamus relief in the Georgia courts, *see* O.C.G.A. §9-14-42(a), but states no § 1983 claim.[7]

## III.   CONCLUSION

For the reasons explained above, Dilas' Complaint should be

---

[7]   The Court notes that Dilas does not allege that the Parole Board's decision not to advance his parole eligibility date was arbitrarily made or based on an impermissible reason (*e.g.*, his race or religion).  *See* doc. 1 at 5-6.  "His success in an action against the board," however, "would be dependent upon his demonstrating a gross abuse of discretion by that board in denying the relief sought."  *Lewis v. Griffin*, 258 Ga. 887 (1989) (citing OCGA § 42-9-42(c), (d); *Justice v. State Board of Pardons and Paroles*, 234 Ga. 749 (1975)).

**DISMISSED** for failure to state a claim.[8]   Meanwhile, it is time for plaintiff to pay his filing fee.  His PLRA paperwork reflects $0 in average monthly balance and deposits.  Doc. 5.  He therefore owes a $0 initial partial filing fee.  *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The   Clerk   is   **DIRECTED**   to   send   this   Report   and Recommendation (R&R) to plaintiff's account custodian immediately.  In the event he is transferred to another institution, his present custodian shall forward a copy of this R&R and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.   The  balance  due  from  plaintiff  shall  be  collected  by  the custodian at his next institution in accordance with the terms of the payment directive portion of this R&R.

---

[8]   To the extent plaintiff believes he can resuscitate these claims, he remains free to submit an Amended Complaint if he believes that it would cure the legal and factual defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012).

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this ___16th___ day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA